JOSEPH A. ANDROVICH
State Bar No. 261788
**POSWALL, WHITE & BRELSFORD**
1001 G Street, Suite 301
Sacramento, California 95814
Telephone:   (916) 449-1300
Facsimile:   (916) 449-1320

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN TRAYNOR,<br><br>Plaintiff,<br><br>vs.<br><br>DAMERON HOSPITAL, and DOES 1 through 30, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.   EMTALA Violations<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, BRIAN TRAYNOR, complains of defendants, and each of them, for an amount in excess of $25,000.00 and in excess of the minimum jurisdictional limits of this Court, and alleges as follows:

### FIRST CAUSE OF ACTION
(EMTALA Violations)

1.   The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants, DOES 1 through 30, inclusive, are unknown to Plaintiff, who therefore sues such defendants by such fictitious names, and Plaintiff will amend this complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the defendants, DOES 1 through 30, inclusive, is responsible under

law in some manner, negligently, in warranty, strictly, or otherwise, for the events and happenings herein referred to and proximately thereby caused injuries and damages to Plaintiff as herein alleged.

2. Plaintiff is now, and at all times herein mentioned was, a citizen of and resident within the State of California, and the defendants, and each of them, are now, and at all times herein mentioned were, citizens of and residents within the State of California, and the amount in controversy exceeds the minimum jurisdictional limits of the Court. Diversity is complete.

3. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants were the agents, employees, principals or employers of each of the remaining defendants and were at all times relevant, acting within the course and scope of said relationships and each defendants have authorized, ratified and approved the acts of each of the remaining defendants.

4. That defendants DAMERON HOSPITAL, and DOES 1 through 10, and each of them, are now, and at all times herein mentioned were, California business entities, as a corporation, association, partnership or other type of business entity, doing business as a hospital and clinic, and plaintiffs will ask leave to insert the correct designation when the same has been ascertained.

5. That defendants DOES 11 through 20, inclusive, and each of them, are physicians and surgeons licensed to practice and practicing medicine in the State of California.

6. That defendants DOES 21 through 30 at all times herein mentioned, were nurses, technicians, assistants or other medical practitioners practicing in the State of California.

7. On July 6, 2015, Plaintiff filed a complaint in the San Joaquin County Superior Court of the state of California, case no. 39-2015-00328124-CU-MM-STK.

8. While that action has been pending, Plaintiff's experts have advised that DAMERON HOSPITAL was in violation of the Emergency Medical Treatment and Labor Act (EMTALA) codified in 42 U.S.C. sec.1395dd., which requires action be brought in the appropriate Federal Court.

///

///

9. EMTALA states, *inter alia*, that any hospital that receives Medicare funds and operates an emergency department:

    i. must stabilize any individual determined to have an emergency medical condition, *see* 42 U.S.C. § 1395dd(b); and

    ii. may not transfer (which includes discharge) any individual with an emergency medical condition who has not been stabilized, unless, *inter alia*, the individual requests a transfer or a physician certifies that the benefits of a transfer to another medical facility outweigh the increased risks to the patient, see id. § 1395dd(c).

10. EMTALA defines an emergency medical condition as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in placing the health of the individual...in serious jeopardy, [cause] serious impairment to bodily functions, or serious dysfunction of any bodily organ or part." *Id.* § 1395dd(e)(1)(A).

11. EMTALA defines "to stabilize" to mean "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" *Id.* § 1395dd(e)(3)(A).

12. Defendants receive Medicare funds and operate emergency departments and are subject to the requirements of EMTALA.

13. In doing all the acts herein described, the defendants DAMERON HOSPITAL, and each of them, were in violation of the Emergency Medical Treatment and Labor Act (EMTALA) codified in 42 U.S.C. sec.1395dd. Plaintiff was, and was known to defendants to be, a Medi-Cal patient and came to the emergency departments operated by defendants as defined by EMTALA.

14. On October 17, 2014, plaintiff presented to DAMERON HOSPITAL by ambulance complaining of worsening back pain, electric shocks in his body, and urinary incontinence. Plaintiff was examined by emergency room physician Dr. Osman. Laboratory studies

were ordered and an ultrasound was performed to rule out a blood clot in the leg. The laboratory showed an active infection, as manifested by an elevated white blood cell count, left shift, increased total proteins, and suppressed sodium. The ultrasound was negative. After a number of hours in the emergency department, plaintiff was discharged at 2:30 a.m. on October 18, 2014 by Dr. Osman with instructions to follow-up with his primary care physician the next morning. The records clearly indicate that plaintiff did not have a primary care physician. Since plaintiff arrived by ambulance, he had to call his friends and family for a ride home. However, since it was the middle of the night, it was not until close to 9:00 a.m. on October 18, 2014 that plaintiff physically departed the emergency department.

15. There was a marked change in plaintiff's condition in between the instruction for discharge at 2:30 a.m. and 9:00 a.m., the time plaintiff physically departed DAMERON HOSPITAL. At 4:00 a.m., DAMERON HOSPITAL employee Jennifer Fillion, R.N. noted plaintiff as having extraordinary difficulty ambulating, and he was noted to be holding on to furniture to ambulate. This is a marked change in condition which required a medical screening examination to determine whether an emergency medical condition existed. Instead, plaintiff was not examined, the physician was not notified, and plaintiff was sent home in a private vehicle. At about 11:00 a.m. on October 18, 2014, when attempting to ambulate from the vehicle to his home, plaintiff collapsed.

16. Plaintiff returned by ambulance to the DAMERON HOSPITAL emergency department on October 18, 2014 where a CT scan revealed a spinal abscess, an emergency surgical crisis. Plaintiff was transferred to UCSF where he underwent urgent neurosurgery, care, and treatment. The delay in diagnosis and treatment caused a worsening of plaintiff's condition and symptoms, and he is now paralyzed.

17. Plaintiff was not provided with an appropriate medical screening examination to determine if an emergency medical condition existed. Plaintiff received no treatment; instead, he was sent home. Plaintiff's emergency medical condition was not discovered based on the failure to conduct the required medical screening examination, and therefore, his emergent medical condition was not treated or addressed.

18. At all times here relevant, Plaintiff suffered from an emergency medical

condition which required a medical screening examination. Defendants, and each of them, failed to provide an adequate medical screening evaluation thereby delaying required treatment to Plaintiff.

19. Defendants, and each of them, were required by EMTALA, to provide treatment to either stabilize or resolve Plaintiff's medical condition. Defendants, and each of them, did neither and ultimately sent Plaintiff away in violation of EMTALA.

20. As a result of doing all of the acts herein, Defendants are liable for fines and penalties and Plaintiff has a right pursuant to EMTALA to pursue a "private cause of action" which Plaintiff elects to do herein.

WHEREFORE, Plaintiff prays for judgment against the defendants, and each of them, as follows:

1. For general damages in a sum in excess of the minimum jurisdictional limits of this Court;
2. For medical and incidental expenses according to proof;
3. For all costs of suit incurred herein;
4. For loss of earnings according to proof;
5. All prejudgment interest on general and special damages from the date of the incident of the present complaint; and
6. For such other and further relief as this Court may deem just proper.

DATED: October 17, 2016

POSWALL, WHITE & BRELSFORD

JOSEPH A. ANDROVICH
Attorneys for Plaintiff